IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES T.R. HUTCHISON, | ) | CASE NO. 1:13 CV 1462 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

# Introduction

**A.    Nature of the case and proceedings**

Before me[1] is an action by James T.R. Hutchison under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his applications for child's insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Hutchison, who previously received childhood disability benefits under his mother, had those benefits terminated in 2003 when he was incarcerated.[11] He was released from prison in 2009 at age 25 and filed the present application for benefits.[12] He is now married, has a young child, and has obtained a GED.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Hutchison had the severe impairments of personality disorder and anxiety disorder.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Hutchison's residual functional capacity ("RFC"):

---

[6] ECF # 12.

[7] ECF # 18 (Hutchison's brief); ECF # 21 at 1-21 (Commissioner's brief); ECF # 22 (Hutchison's reply brief).

[8] ECF # 18-1 (Hutchison's charts); ECF # 21 at 22-32 (Commissioner's charts).a

[9] ECF # 19 (Hutchison's fact sheet).

[10] ECF # 23.

[11] Transcript ("Tr.") at 26.

[12] *Id.*

[13] *Id.* at 31.

[14] *Id.* at 29.

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to the performance of simple, routine and repetitive tasks, in a work environment where changes occur no more than occasionally, and with no greater than occasional interaction with the general public or coworkers.[15]

Hutchison has no past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Hutchison could perform.[17] The ALJ, therefore, found Hutchison not under a disability.[18]

## C. Issues on judicial review and decision

Hutchison asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Hutchison presents the following issues for judicial review:

- Dr. Martin, a treating psychiatrist, opined that Hutchison had marked limitations in his ability to interact with others, complete tasks, and handle stress. The ALJ found the opinion inconsistent with the record and clinically accepted techniques. He failed to make any weight assignment as to this opinion. Did the ALJ appropriately analyze and articulate as to Dr. Martin's opinion?

---

[15] *Id.* at 30.

[16] *Id.* at 35.

[17] *Id.*

[18] *Id.* at 36.

- The ALJ found Hutchison had moderate difficulties with concentration, persistence, and pace. He included no durational or pace-based limitations in the RFC. Does the RFC finding absent these limitations have the support of substantial evidence?[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different

---

[19] *See*, ECF # 18 at 3.

conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

2.   *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[70]

**B.    Application of standards**

This is yet another case requiring me to apply the *Gayheart* standards to a decision made prior to *Gayheart*. As I have recently discussed at some length in several matters,[71] case authority construing *Gayheart* in similar situations has found that decisions by the ALJ need not strictly comply with the full rubric of *Gayheart* to be affirmed but rather will be deemed in compliance if, after a holistic reading of the opinion, the ALJ's determination of weight was "sufficiently specific to make clear the weight given to the opinion and the reasons for that weight."[72]

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[70] *Id.* at 940.

[71] *See, Fink v. Comm'r of Soc. Sec.*, Case No. 5:13 CV 1393 (N.D. Ohio Sept. 26, 2014); *Aiello-Zak v. Comm'r of Soc. Sec.*, No. 5:13 CV 987, 2014 WL 4660397, at *5 (N.D. Ohio Sept. 17, 2014).

[72] *Brasseur v. Comm'r of Soc. Sec.*, 525 F. App'x 349, 350 (6th Cir. 2013) (citing *Gayheart*, 710 F.3d at 376).

With that in mind, I turn first to the issue of whether the ALJ here found and articulated substantial evidence for his handling of the opinion of Ruth Martin, M.D. Hutchison's treating psychiatrist.

Dr. Martin prepared a residual functional capacity evaluation on March 11, 2011.[73] That form noted Hutchison was diagnosed as bipolar and that he had marked limitations in the following areas:

1. Relating to other people;

2. Ability to maintain concentration or attention for extended periods;

3. Understand, carry out and remember instructions;

4. Respond appropriately to supervision;

5. Respond appropriately to co-workers;

6. Respond to customary work pressures;

7. Respond appropriately to changes in the work setting;

8. Use good judgment;

9. Behave in an emotionally stable manner.[74]

In addition to these notes, Dr. Martin stated that Hutchison's medication improved his mood and lowered his anger.[75] But, she added, in addition to his schizoaffective disorder (a

---

[73] Tr. at 437-38.

[74] *Id.*

[75] *Id.* at 438.

type of bipolar disorder), there were also "lots" of "axis II issues" and "many resentments."[76] She opined that Hutchison's condition would "probably" deteriorate under the stress of a job and that he would be absent from work more than three times per month.[77]

The ALJ dealt with Dr. Martin's opinion in two places.

First, the ALJ gave an extensive review of Hutchison's treatment with Dr. Martin beginning in August, 2009, and ending in June, 2010. The ALJ summarized the results of four visits during that period as showing that:

1. Hutchison was given a GAF score of 60, indicating "no more than moderate difficulties with social and occupational functioning;"

2. Hutchison was prescribed Prozac and Risperdal, and instructed to return to Dr. Martin on a monthly basis for medication management, but Hutchison "cancelled or failed to show up" for these appointments "on a number of occasions," thus causing "a significant gap in the claimant's history of treatment;"

3. Hutchison was "not entirely compliant" in taking his medications, such as when he was found to have "stopped taking his medication a 'long time ago'" in February, 2010, and that he "had not taken his medications for two months" in June, 2010, and that he "had been off his medication for three weeks" in November, 2010.[78]

In a different area, the ALJ then examined Dr. Martin's work-related functional assessment. After accurately summarizing the marked limitations Dr. Martin ascribed to Hutchison, and reviewing her attached opinions, the ALJ stated:

---

[76] *Id.*

[77] *Id.*

[78] *Id.* at 33.

> Certain aspects of Dr. Martin's opinion are, in fact, consistent with the residual functional capacity determined in this decision. Namely, that the claimant's mental problems limit his ability to interact with others, complete tasks, and handle stress. However, the undersigned finds that Dr. Martins' opinion that the claimant has marked limitations in these areas are inconsistent with the objective record as a whole and are not supported by medically acceptable clinical and laboratory techniques. Furthermore, this opinion is inconsistent with her own psychiatric evaluation, as noted above, which rated the claimant's symptoms as moderate (Ex.4F/3).[79]

I note first, as Hutchison points out, that the ALJ here made no specific assignment of weight to Dr. Martin's opinion.[80] This failure is especially noticeable because the ALJ did make specific assignments of weight to the two other opinions discussed – assigning "little weight" to the functional opinion of Iris Pinheiro, Hutchison's community psychiatric supportive treatment worker, and "great weight" to the opinions of "the State medical advisors."[81]

That said, this is an extremely frustrating case. The Commissioner does not directly address the failure to assign specific weight, nor the fact that the ALJ's reasons for discounting Dr. Martin's opinion were largely given only in general terms – *i.e*, the opinion is "inconsistent with the objective record as a whole and [is] not consistent with the objective record as a whole and [is] not supported by medically acceptable clinical and laboratory techniques."[82] Instead, the Commissioner argues that the check-box form is of itself a reason

---

[79] *Id.* at 34.

[80] ECF # 18 at 5.

[81] Tr. at 34.

[82] *Id.*

to discount this opinion, and a review of portions of the treatment record not cited by the ALJ support treating Dr. Martin's opinion as it was treated.[83]

In that regard, I have recently discussed in some detail the check-box form in another case.[84] In sum, the issue is not the form – check-box or narrative – but rather, as the regulations and the case law specify, whether the opinion is supported by well-established clinical and diagnostic techniques and by the other substantial evidence in the record.[85] Moreover, the Sixth Circuit is very clear that the medical source is not required to include all the evidence supporting his opinion within the four corners of that opinion.[86] And, in something that the Commissioner rarely mentions when presenting this argument, a great deal of the state reviewing sources – on which the Commissioner frequently relies – also use the check-box form. Finally, whatever the merit of this argument, it is entirely impermissible *post hoc* rationalization since this is an argument coming from the Commissioner's counsel, and not something from the ALJ.

Likewise, the Commissioner's citation to treatment notes never specifically mentioned by the ALJ as reasons for discounting Dr. Martin's opinion are also impermissible *post hoc* rationalizations that prove the skill of the Commissioner's counsel in combing the record, but

---

[83] ECF # 21 at 15-17.

[84] *See*, *Stancato v. Comm'r of Soc. Sec.*, Case No. 5:13 CV 1519 (N.D. Ohio Sept. 24, 2014).

[85] *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); 20 C.F.R. § 416.927(c)(2).

[86] *Garner*, 745 F.2d at 391.

do not establish that the ALJ relied on the facts cited in making his decision. The Commissioner's argument that all the specific facts were subsumed in the ALJ's comment that Dr. Martin's opinion was contrary to "the objective record as a whole,"[87] was expressly rejected by the Sixth Circuit in *Friend*, where it held that such a blanket citation to "other evidence in the record," without clearly specifying exactly what evidence is being referred to, does not constitute good reasons for giving the treating source "the short end of the stick."[88]

Yet, the ALJ here did cite one specific example from Dr. Martin's treatment notes that could potentially be substantial evidence for assigning something less than substantial weight to her opinion. The ALJ noted that Dr. Martin's own psychiatric evaluation in August, 2009, gave Hutchison a GAF score of 60, which indicates moderate, not severe, symptoms.[89] Such a finding of only moderate impairment is conceivably inconsistent with a later finding of more marked restrictions. But, even if I were to ignore the other defects in the ALJ's opinion and attempt to make an entire case for the ALJ's treatment of Dr. Martin's opinion turn on this one observation, that thread is not strong enough to hold such weight.

---

[87] ECF # 21 at 17.

[88] *Friend*, 375 F. App'x at 551-52.

[89] Tr. at 34; *see also*, Tr. at 328-29 (treatment records of August 6, 2009); ECF # 18-1, at 5 n.2,3 (explaining the level of severity in GAF scores as set forth in the *Diagnostic and Statistical Manual of Mental Disorders*).

In particular, unlike an IQ score, a GAF score can and does fluctuate. Here, Dr. Martin found Hutchison had a GAF score of 35 just one month before she assessed that score at 60.[90] A score of 35 is consistent with "major impairment" in areas such as work functioning[91] and so would be fully consistent with Dr. Martin's opinion. Moreover, the record also shows another GAF score from 2005 when Hutchison was assessed at 41-50 – also a level that would be consistent with Dr. Martin's opinion.

Thus, even if I were to ignore, or excuse, the failure of the ALJ to make any specific finding of weight as to Dr. Martin, and his impermissibly broad reason for discounting that opinion as inconsistent with "the record as a whole," I cannot find that discounting Dr. Martin's 2011 opinion because it is inconsistent with a GAF score in 2009 states a "good reason" for such a decision. As noted, if the ALJ wanted to establish this as a good reason, he would have to explain why a lower GAF score by Dr. Martin only a month before, which is consistent with her later opinion, is not relevant to the analysis, or why any GAF score, given their essential fluidity, is relevant as proof of a fatal "inconsistency."

In sum, for all the reasons stated, there is not substantial evidence for the ALJ's decision not to make any finding of weight concerning Dr. Martin's opinion, and there is not substantial evidence for the reasons to discount that opinion in any degree. Thus, the current decision must be reversed and the matter remanded.

---

[90] Tr. at 314-24 (treatment notes from July 21, 2009).

[91] *See*, ECF # 18 at 5.

Again, this should not be understood as prejudging what may be developed and articulated on remand. But it should be clear that the current handling of this opinion was not in conformity with the regulations or the case law even under the most generous and expansive reading of that authority.

Further, because the matter must be reversed on the first issue presented for judicial review, I make no finding as regards the second. However, on remand, the ALJ is directed to consider whether the record as developed supports adding additional limitations to the RFC.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Hutchison had no disability. Therefore, the denial of Hutchison's applications is reversed, and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 29, 2014                s/ William H. Baughman, Jr.
                                         United States Magistrate Judge